Dear Mr. Busby:
Your request for an Attorney General's Opinion has been referred to me for research and reply. Your inquiry raises the following legal issues:
 (1) whether a police jury's change of a Road Foreman's work area and responsibilities so as to coincide with a police juror's political district violates the salient provisions of the Parish Transportation Fund Act.
 (2) whether equipment purchased with individual district funds can be appropriated or used by another road district that does not own the equipment.
To arrive at a reasoned conclusion on the first question requires a careful analysis of La. R.S. 33:1236 (2) and 48:755. The former defines the circumstances under which a police jury has power to change, modify, build or repair parish roadways. The latter establishes the Parish Transportation Fund ("PTF") and the requirements for receiving such funds.
The power to make and repair roads is included among the many powers conferred upon police juries by the legislature in La. R.S. 33:2236 (2) which reads as follows:
§ 1236. Powers of parish governing authorities
 The police juries and other parish governing authorities shall have the following powers: *Page 2 
 B. (2)(a) To regulate the proportion and direction, the making and repairing of the roads, bridges, causeways, dykes, dams, levees and highways when, in the opinion of the police jury, such work will further the best interests of the parish and the parish road system;
In other words, although the legislature empowers police juries to regulate the maintenance and construction of parish roads under this statute, the power of police juries is limited by La. R.S. 33:2236 (2) to works police juries determine to be in the best interests of the parish or the parish road system.
Other restrictions are placed on police jurors' power to regulate parish roadways under the statutory provisions of the PTF. La. R.S.48:755 provides in pertinent part as follows:
§ 755. System of administration A. Unless otherwise provided by law, parishes shall adopt a system of road administration which shall require approval of the governing authority for any expenditures made out of this fund, and no member of the governing authority shall expend any funds in his ward or district without the approval of the parish governing authority. Each parish shall adopt a parishwide system of administration inclusive of parish roads within municipalities which shall include the development of a capital improvement program on a selective basis, centralized purchasing of equipment and supplies, centralized accounting, and selective maintenance and construction. All construction shall be based upon engineering plans and inspection.
 B. (1) The parishwide capital improvement program shall list all projects to be constructed during the fiscal year. Each parish shall undertake a continuing study of the needs of the various parish roads for the purpose of bringing existing roads up to current standards or for replacement of existing roads where required and shall keep the information so developed up to date through a continuing annual needs study. Each parish shall develop a parishwide program of construction inclusive of parish roads within municipalities to be commenced the ensuing fiscal year which shall be based upon the anticipated revenues to be appropriated by the legislature and listed in a prioritized ranking based on parishwide needs inclusive of parish roads within municipalities and shall include overlay *Page 3 
projects. The program shall also list the projects which may reasonably be anticipated to be constructed in the following two years. All projects listed for the total three-year program shall be approved by the parish governing authority. The capital improvement program shall be adopted by the parish governing authority prior to the beginning of the first year of the three-year plan. The program shall be adopted annually regardless of whether the parish governing authority anticipates capital improvements in the first year of the plan.
 (2) The funds appropriated to each parish shall be used for the benefit of the parish as a whole and within the priority ranking for the parish. The most critical needs existing parishwide according to the priority ranking shall be met first. Funds shall not be expended in the parish until the parish has complied with the provisions of this Part.
 C. The parishwide selective maintenance program inclusive of parish roads within municipalities shall provide for a schedule of the work to be performed by category, on a weekly basis. The program shall be prepared and administered by the parish road manager. The parish road manager may authorize maintenance work not contained in the weekly schedule upon receipt of constructive notice of a defect in the parish road system and when, in the opinion of the parish road manager, the defect constitutes a hazard to public safety. The parish road manager shall maintain a record of the work so authorized and shall report the total amount of such expenditures on a monthly basis to the parish governing authority.
Any reasonable interpretation of the PTF would conclude that the Legislature, by enacting this legislation, intended to replace an outmoded, inefficient and parochial "ward" system of road administration with a more efficient, universal and centralized "unit" system.
Under the old ward system, wards resembled petty baronages. Individual police jurors had a myopic view, thinking only of their respective districts. Ward Bosses hired, fired, supervised separate ward work crews and determined the projects to be undertaken in their own wards. They budgeted and spent money for their projects and purchased equipment and supplies for use in their ward only, but the systemic framework created a disincentive for them to think beyond their own ward boundaries. Under the ward system, roads may have been built or repaired if neighboring landowners gave economic concessions to the Ward Boss. Road construction or repair may have resulted from other non-economic considerations as well. In any case, regardless of what motivated road construction and repair in the ward system, it proved to be inequitable, inefficient and decentralized. *Page 4 
The PTF ushered in major reform. The statutory provisions of the PTF require the parish road system to be administered efficiently and centrally by a police jury as a whole. This method of administration is commonly referred to as the "unit system." The unit system recognizes that each police juror represents a certain constituency within his or her voting district. It replaces the ward system under which individual jurors functioned autonomously for the exclusive benefit of his or her own ward. The unit system calls for the implementation of centralized accounting and parishwide capital improvement and selective maintenance programs based upon the prioritization of projects developed by the police jury collectively. Expenditures are made only upon the approval of the Police Jury, and pursuant to a duly adopted budget. A centralized purchasing system must be implemented and work assignments are scheduled and supervised, centrally, by the parish road manager.
A proposal has now been submitted to permit the work area of a Road Foreman to be changed so that the Road Foreman's area of responsibility would be more closely aligned to the police juror's election district. This office has serious misgivings about whether this proposal complies with the PTF's mandate to "adopt a parishwide system of administration." The proposal implies that the only change would involve an alteration of maintenance areas: The Road Foreman for Road Districts 04 and 20 would have responsibility for Road Districts 04, 20 and 11 under the new plan. But what would the actual impact of this change be? To whom would the Road Foreman now be accountable? The answer is the police juror whose district he now maintained. Not only would the proposal seem to discourage a police juror from viewing the roadway system on a parishwide basis as required by the PTF, but it would also seem to create a flawed system where a police juror's attention would be devoted solely to the work and maintenance that was occurring in his district.
In short, a maintenance structure that produces many of the same pitfalls of a ward system is as anathema to the PTF as the implementation or retention of a ward system itself. Moreover, configuring maintenance areas on the basis of election districts undermines the PTF's rationale and may very well constitute an illegal vestige of the old ward system. Such a system of road administration based on the ward system constitutes a violation of the provisions of the PTF, resulting in the withholding and possible forfeiture of PTF monies. In addition to these possible consequences, the PTF subjects individual police jurors to criminal prosecution and civil liability. La. R.S. 48:762 and Strahan v. Fussell, 42 So. 2d 129 (La.App. 1st Cir. 1949).
The answer to your first inquiry eliminates the possibility that equipment purchased with one district's funds could be used by another road district that does not own such equipment and therefore renders your second question moot. *Page 5 
We hope that this sufficiently answers your inquiries, but if we can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 By:___________
 Christopher D. Matchett
 Assistant Attorney General
 CCF, Jr.:CDM:ls